Victor WICKERSHAM, Petitioner,

v.

STATE ELECTION BOARD of the State of
Oklahoma; George D. Key, Chairman;
Leo Winters, Secretary; Paul Darrough,
Member, Respondents.

No. 39444.

Supreme Court of Oklahoma.

Dec. 6, 1960.

Gomer Smith, Jr., Oklahoma City, Percy Hughes, Hobart, James P. Garrett, Mangum, for petitioner.

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Ass't Atty. Gen., for respondents.

V. P. Crowe, Oklahoma City, Douglas McKeever, Enid, T. D. Nicklas, Lawton, for intervenor, Clyde A. Wheeler, Jr.

PER CURIAM.

In this original proceeding, petitioner seeks a writ of mandamus requiring respondents to recount the ballots cast in the last General Election for the office of the House of Representatives of the Congress of the United States for the Sixth Congressional District of Oklahoma, (hereafter referred to as "office") and requiring respondents to declare that all votes cast for Clyde A. Wheeler, Jr., (hereafter referred to as "Wheeler") as the nominee of the Republican Party at said election for said office were illegal and void, and for a writ prohibiting respondents from issuing a Certificate of Election to Wheeler.

The uncontroverted facts bearing upon the issues presented by petitioner's petition for a writ of mandamus and a writ of prohibition, can be summarized as follows:

Petitioner was duly nominated as the Nominee of the Democratic Party for the office. At the General Election held on November 8, 1960, petitioner purportedly received 67,837 votes of the votes cast and Wheeler, his opponent, purportedly received 68,025.

Following the election, petitioner filed two petitions with respondents. In one he sought a recount of the votes cast at the General Election for the office and in the other he sought a declaration on respondent's part that Wheeler was not in fact the nominee of the Republican Party for the office.

A majority of the respondents, following a hearing on the above referred-to petitions, found and held that it was without jurisdiction in the matter. One member was of the opinion that respondents had jurisdiction, but that they should not assume jurisdiction. On request of petitioner, respondents stayed the matter of entering a formal order for 72 hours in order to give petitioner time within which to file this proceeding, which was apparently filed within the time so allowed.

On or about May 12, 1960, Alice Fryer, as the unopposed nominee of the Republican Party for the office, received a certificate as such from respondents. At the first Primary Election held July 5, 1960, Alice Fryer was nominated by the Republican Party for the office. On July 23, 1960, Alice Fryer filed a notice with respondents to the effect that she refused to be a candidate for the office. On August 12, 1960, the Republican State Central Committee of the Sixth Congressional District certified that Wheeler was the nominee of the Republican Party for the office. On August 16, 1960, Wheeler filed with respondents a notification and declaration of his candidacy for the office, and his name appeared as the nominee of the Republican Party for the office on the ballots submitted to the voters of the Sixth Congressional District.

Petitioner offered to prove at the proceedings had on his petitions that he filed with respondents that Wheeler was not qualified to seek the office that he sought; that he was not in fact a resident of Oklahoma and a "bona fide legal voter" thereof at the time he notified respondents of his candidacy for the office.

Petitioner requests that this proceeding be referred in order that evidence may be presented on the last above referred-to matter and on other matters bearing on the relief which he seeks in this proceeding. For reasons hereinafter given, we are of the opinion that such evidence is not at present relevant.

As we read 26 O.S.1951 § 165a, the Legislature intended that questions such as are here raised relative to the qualifications of a person who by notification and declaration as in 26 O.S.1951 § 162 provided, makes known that he seeks to be a candidate for a particular office, be first timely presented to the Election Board with which the declaration and notification is filed. The first cited statute reads in part as follows:

"It shall be the duty of the Election Board with whom any notification and declaration is filed, to hear and determine all questions and objections that may arise concerning same; and the decision of such Board shall in all cases be final. If the legality or regularity of a notification and declaration is challenged, questioned or objected to upon any ground, the objections or grounds shall * * * be filed with the proper Election Board, together with a copy for the candidate whose filing or candidacy is challenged. The same shall be set down by the Secretary of the Election Board for a hearing before the Election Board * * *. No objection or challenge to a candidacy shall be filed after five days from the close of the filing period. * * *"

In Murphy v. Darnell, Okl., 268 P.2d 860, 861, it was claimed that Darnell, who was nominated as the nominee of the Democratic Party to the office of Superintendent of Schools, was not in fact qualified to be such nominee because he was not "the holder of an appropriate administrator's certificate issued by the State Board of Education" at the time he became a nominee for the office or at the time of his election thereto.

The last above quoted language appeared in 70 O.S.1951 § 3-1, which language followed language to the effect that "no person shall be eligible to nomination, appointment or election to the office of County Superintendent of Schools unless" he was the holder of a certificate issued by the State Board of Education.

In rejecting the contention that Darnell was not in fact "eligible to nomination, appointment or election to the office of County Superintendent", this was said in the body of the opinion:

"* * * The exclusive method to challenge, question or object to the 'legality or regularity of a notification and declaration' is provided by 26 O.S.1951, § 165a. The action of the County Election Board in placing the applicant's name on the ballot as a candidate for the office is in the nature of a judgment of that body in its semi-judicial capacity and that judgment cannot be collaterally attacked. Any person desiring to raise the question of eligibility of a proposed candidate may do so under the provisions of said statute. Not having done so, he cannot, thereafter, question that final action of the board. Such a protest may be filed by anyone, whether he be a member of the political party, in which the filing has been made, or not. Darst v. County Election Board of Craig County, 194 Okl. 469, 152 P.2d 912."

We are of the opinion that the rule so announced in the cited case is applicable to the issues under consideration. We are, therefore, of the opinion that petitioner's failure to comply with the provisions of Sec. 165a, supra, until after the votes cast at the General Election had been counted precludes our granting petitioner relief herein on the grounds that Wheeler was disqualified to hold the office which he sought.

In so holding, we have not overlooked the fact that the only provision of said statute treating within the time within which an objection shall be filed to a notification and declaration of candidacy is the provision to the effect that "No objection or challenge to a candidacy shall be filed after five days

from the close of the filing period"; that the filing period referred to in the quoted provision was the period provided in 26 O.S.1951 § 163, and that said period had expired prior to Wheeler's filing his notification and declaration.

■ By enacting Sec. 165a, supra, the Legislature, in our opinion, clearly indicated that it intended that the matter of the eligibility of a candidate for an office be first considered by the Election Board with which the candidate filed his notification and declaration and not by the courts; that an objection or protest to such notification and declaration be filed in all instances and that a hearing thereon be held at an early date and before an election is held. It is apparent that such construction would serve to avoid (a) electors voting for a candidate whom they thought was eligible for the office which he sought but who in fact was not eligible; (b) candidates expending time and money campaigning for an office which they believe they are qualified and eligible to hold but who are not in fact eligible or qualified for the office; and (c) the state expending revenue in conducting an election relative to said office. Our construction is also in keeping with the proposition that the right to contest an election may be lost by laches or inexcusable delay. See 29 C.J.S. Elections, § 260, p. 372, and Martin v. McGarr, 27 Okl. 653, 117 P. 323, 325, 38 L.R.A., N.S., 1007. We note that petitioner does not here claim that he did not know or by the exercise of reasonable diligence could not have learned long before the General Election was held of the facts which he now asserts disqualified Wheeler.

On all issues presented by this proceeding, respondents contend that this Court is precluded from granting any relief to petitioner because of the provisions of Art. 1, Sec. 5 of the United States Constitution to the effect that "Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members". As supporting said contention, respondents cite Daniel v. Bound, 184 Okl. 161, 85 P.2d 759, and refer us to cases cited in the footnotes to 91 C.J.S. United States § 16, p. 34. In counter-

ing said contention, petitioner cites and relies principally upon State ex rel. Cloud v. Election Board of the State of Oklahoma et al., 169 Okl. 363, 36 P.2d 20, 94 A.L.R. 1007, and People ex rel. Brown v. Board of Supervisors of Suffolk County, New York, 216 N.Y. 732, 110 N.E. 776.

In view of the fact that we have elected to base our decision on issues relative to Wheeler's alleged disqualifications to seek the office, upon a State statute, there remains for consideration the matter of whether the provisions of Art. 1, Sec. 5, supra, precludes us from considering the remaining issue of whether petitioner is entitled to a recount of the votes cast for the office.

In Daniel v. Bound, supra, which opinion was handed down in 1938, the petitioner sought a review of an order of the State Election Board dismissing his petition for a recount of votes cast for the office of State Representative. In declining to review said order, we held that by reason of the provisions of Art. 5, Sec. 30, Okla.Const., which provisions are identical to those of Art. 1, Sec. 5 quoted, supra, neither the State Election Board nor this Court has jurisdiction to hear and determine proceedings challenging the correctness of General Election returns affecting candidates for the office of State Representative; that such power rests exclusively in the House of Representatives.

Petitioner points out that it was only after our opinion in the last above cited case had been handed down that the Legislature, in 1957, amended 26 O.S.A. § 392, so as to grant the right to a recount in an election such as this one under consideration, which fact petitioner contends serves to distinguish Daniel v. Bound (which was handed down in 1938) from the instant case.

■ We are of the opinion that where the right to a recount of votes cast for a particular office is not granted by statute, a proceeding that has for its purpose the matter of recounting the votes in fact "constitutes a challenge to the title to the office" (at page 760, 85 P.2d) and is therefore in

effect an action in the nature of quo warranto to try the right or title to the office. In such cases all of the election processes have been carried out before the proceeding is filed and for said reason Congress alone has exclusive jurisdiction and it alone can grant relief. On the other hand, where, as a part of the election proceedings, a recount is provided for in proper instances, an election cannot be considered as over or final until a recount is allowed, and until the election is final, the courts can and should exercise jurisdiction for the purpose of requiring lower tribunals to comply with the election statutes. In State ex rel. Cloud v. Election Board of the State of Oklahoma, 169 Okl. 363, 36 P.2d 20, 94 A.L.R. 1007, we held that Art. 5, Sec. 30 of the Okla.Const. did not divest this Court of jurisdiction to determine the question of a candidate's eligibility for election as a State Representative prior to the close of the election.

In view of the fact that our recount statute (Sec. 392, supra) is an integral part of our election laws, and in view of the further fact that an election in our opinion is not over or final until a proper application for a recount timely filed is disposed of, there are no substantial grounds for distinguishing the right to a recount in a proper case from a right to a count of the votes in the first instance.

Respondents and intervenor contend that since Congress, under the provisions of Art. 1, Sec. 5, supra, is the ultimate judge of "its own Members" it may refuse to seat petitioner notwithstanding a recount of the votes may show that he in fact received more votes than Wheeler. Although Congress may have such power, we do not agree with respondents' suggestion that to accept jurisdiction herein and grant relief we will be doing a vain or futile thing. We are not convinced that Congress will refuse to recognize the result of a recount or a Certificate of Election issued in accordance with the recount. If we entertained doubt on said score, we nevertheless would be of the opinion that the respondents are under a duty to comply with the election laws, and since respondents have failed to comply with said laws by granting a recount, we are under a duty to direct respondents to grant a recount.

Petitioner's application for a writ of mandamus directing respondents to recount the ballots cast at the election first herein referred to is granted and respondents are ordered and directed to recount said votes within the time and manner provided by statute. All other relief sought by petitioner is denied.